UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BOBBIE N. E.,[1] | : | Case No. 3:20-CV-524 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

Plaintiff, Bobbie N. E., brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #14), the Commissioner's Memorandum in Opposition (Doc. #17), Plaintiff's Reply (Doc. #18), and the administrative record (Doc. #11).

**I.    Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on May 26, 2017, alleging disability due to ankle problems and depression. Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Deborah F. Sanders. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

Step 1: Based on the totality of the evidence, Plaintiff did not engage in substantial gainful activity during the period from February 12, 2013, the alleged onset date of disability, through December 31, 2013, the date last insured.

Step 2: Based on the objective medical evidence, Plaintiff has the following severe combination of impairments from the alleged onset date of disability through the date last insured: history of right malleolus with open repair of syndesmosis and removal of screws procedures, right ankle degenerative joint disease and osteopenia, and right foot osteoarthritis.

Step 3: Based on the objective medical evidence, Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the criteria of any Listings in 20 CFR Part 404, Subpart P, Appendix 1 from the alleged onset date of disability through the date last insured.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, through the date last insured, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "sedentary work … but she can carry and lift up to 20 pounds occasionally, and up to 10 pounds frequently. She can stand and/or walk for up to 2 hours in an 8-hour workday. Pulling and pushing with the light lower extremity, is limited to no more than frequently. Balancing, climbing ramps and stairs, crawling, crouching,

|   |   |
|---|---|
|   | kneeling, and stooping, are each limited to no more than occasionally. She cannot climb ladders, ropes, and scaffolds, and operate motor vehicles, and must avoid all exposure to dangerous machinery and unprotected heights." |
| Step 4: | Based on Plaintiff's RFC from the alleged onset date of disability through the date last insured, she cannot perform her past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and RFC from the alleged onset date of disability through the date last insured, jobs exist in significant numbers in the national economy that she can perform. |

(Doc. #11-2, *PageID* #s 73-85).[2] Based on these findings, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act from February 12, 2013, the alleged onset date of disability, through December 31, 2013, the date last insured. *Id.* at 85.

The evidence of record is adequately summarized in the ALJ's decision. *Id.* at 74-83, Plaintiff's Statement of Errors (Doc. #14), and the Commissioner's Memorandum in Opposition (Doc. #17), and Plaintiff's Reply (Doc. #18). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial

---

[2] Plaintiff's assignment of error was limited to the ALJ's decision to not include the leg elevation limitation in her RFC. Accordingly, she has waived her right to challenge any other findings, as she failed to adequately raise them. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (finding plaintiff had waived its challenge to the ALJ's findings on certain impairments by not raising it in the merits brief).

evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.    Discussion**

In her Statement of Errors, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because she failed to include a limitation for Plaintiff's need to elevate her right lower extremity due to swelling and pain. (Docs. #14 and 18). The Commissioner maintains that the ALJ's decision is supported by substantial evidence.

An individual's RFC is an assessment of "the most [the individual] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (Hogan, M.J.), *report and recommendation adopted*, No. 1:09CV411,

2010 WL 3730981 (S.D. Ohio Sept. 8, 2010) (Dlott, D.J.). When considering the medical evidence and assessing an RFC, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that she sets forth in the plaintiff's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Soc. Sec. R. 96–8p, 1996 WL 374184, at *6–7 (July 2, 1996) (internal footnote omitted).

Further, in rendering the RFC determination, the ALJ need not discuss every piece of evidence considered. *See Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. 2004). However, the ALJ still has an obligation to consider all of the evidence before him and to meaningfully explain how the evidence supports each conclusion and limitation included in the RFC. *See Ryan v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 797, 803 (S.D. Ohio 2017) (Newman, M.J.), *report and*

*recommendation adopted*, No. 3:16-CV-124, 2017 WL 3412107 (S.D. Ohio Aug. 8, 2017) (Rice, D.J.).

As noted previously, Plaintiff's challenges to the ALJ's decision stems from the omission of a limitation requiring Plaintiff to elevate her right lower extremity due to swelling and pain. (Doc. #14, *PageID* #s 1598-1600). According to Plaintiff, the need for this limitation was well documented in the record and the ALJ's failure to include this limitation was reversible error as the vocational expert testified at the hearing that the limitation of elevating a leg to at least waist level or above would be work-preclusive. *Id*. (citing Doc. #11-2, *PageID* #113).

In response, the Commissioner points out that there is only a 10.5-month period between Plaintiff's alleged onset date of February 12, 2013 and the date of her last insured status on December 31, 2013. (Doc. #17, *PageID* #1611). Despite this, Plaintiff cites primarily to evidence from her medical records that occurs after this relevant time period. *Id*. at 1620-21. The Commissioner also points out, that all of the evidence Plaintiff relies on—whether it is within the relevant period or not—are stray, vague treatment recommendations for her to elevate her leg, which do not amount to specific functional limitations. *Id*. at 1621-24. Indeed, no medical opinion supports including a leg elevation limitation in Plaintiff's RFC. *Id*.

The Commissioner's argument is well taken. In this case, ALJ Sanders explained the history of Plaintiff's impairments in her right lower extremity. (Doc. #11-2, *PageID* #s 74-75). She noted that x-rays of Plaintiff's right ankle "documented small nondisplaced avulsion fracture of the lateral malleolus" in February 2013. (Doc. #11-2, *PageID* #74). She also reviewed additional imaging of Plaintiff's right lower extremity that occurred throughout 2013 as well as

the results of Plaintiff's procedures on her right ankle in May and August 2013. *Id*. As a result, ALJ Sanders found that Plaintiff's history of right malleolus with open repair of syndesmosis and removal of screws procedures, right ankle degenerative joint disease and osteopenia, and right foot osteoarthritis all constituted severe impairments. *Id*.

A review of the record also supports ALJ Sanders' conclusion that Plaintiff's "physical impairments and related symptoms, which were generally stable, tolerable, and well controlled from the alleged onset date of disability through the date last insured." *Id*. at 80. As reviewed by ALJ Sanders, Plaintiff's June 2013 x-rays documented appropriate syndesmotic reduction and her September 2013 medical records demonstrated "minimal right ankle swelling with intact sensory and no deformity." *Id.* (citing Doc. #11-8, *PageID* #s 821, 834). Further, despite being prescribed a brace and cane in November 2013 by her orthopedist, Plaintiff was released to bearing weight as tolerated a month later. *Id.* (citing Doc. #11-8, *PageID* #s 825, 862). ALJ Sanders also reviewed the medical evidence for the period after the date of her last insured, which demonstrated similar results. *Id.* (citing Doc. #11-9, *PageID* #908; Doc. #11-11, *PageID* #s 1229, 1234, 1321).

Further, the record does not contain any medical opinion detailing how these lower extremity impairments impact Plaintiff's functioning to the point that they would require her to elevate her right leg on a sustained basis. Instead, Plaintiff relies on generalities in her medical records and stray treatment recommendations that she should elevate her leg in support of her claim that her RFC should have included the work-preclusive restriction of right lower extremity elevation. (Doc. #14, *PageID* #s 1598-1600). These stray recommendations for Plaintiff to elevate her leg without any detail as to when or how long she should engage in this activity are too vague

7

to constitute medical opinions or support specific functional limitations. *See Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018) (finding that an ALJ may properly reject a vague opinion that does not provide any specific functional limitations).

Instead, the only opinions in the record come from the state agency reviewing physicians, Yeshwanth Bekal, M.D., and William Bolz, M.D. (Doc. #11-4, *PageID* #s 583-85, 594-96). Notably, neither of these physicians recommended that Plaintiff have a leg elevation limitation in her RFC. Here, Dr. Bekal reviewed Plaintiff's file in August 2017 and provided an opinion on her functional limitations as of the date of her last insured, December 31, 2013. *Id.* at 583. Specifically, he found that Plaintiff could lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. (Doc. #11-4, *PageID* #584). In support of these exertional limitations, Dr. Bekal cited to several medical records, including treatment notes from February 2013 indicating that Plaintiff fractured her right ankle and that she had developed "gait independence with axillary crutches" by October 2013. *Id.* He also cited multiple x-rays of Plaintiff's foot and ankle. *Id.* As for Plaintiff's postural limitations, Dr. Bekal opined that she could frequently balance, stoop, kneel, and crouch; occasionally climb crawl and climb ramps and stairs; and never climb ladders, ropes, or scaffolds. *Id.* Finally, Dr. Bekal indicated that Plaintiff should avoid exposure to hazards such as machinery and heights. *Id.* Dr. Bolz reviewed Plaintiff's file upon reconsideration in September 2017 and affirmed all of the limitations provided in Dr. Bekal's assessment for the relevant period. *Id.* at 594-96.

In reviewing the opinions provided by Drs. Bekal and Bolz, ALJ Sanders found them to be "persuasive in assessing [Plaintiff's] physical functional limitations, restrictions, and [RFC] from the alleged onset date of disability through the date of last insured." (Doc. #11-2, *PageID* #82). She explained that the opinions of Drs. Bekal and Bolz were "consistent with and supported by the totality of the evidence" and cited to numerous medical records as examples. *Id*. at 81-82. With regard to Plaintiff's right lower extremity, in particular, ALJ Sanders noted that Drs. Bekal's and Bolz's limitations were consistent with and supported by evidence, including September 2013 medical records demonstrating minimal right ankle swelling with intact sensory and no deformity; Plaintiff's orthopedist prescribing her only a brace and cane in November 2013 and releasing her to bearing weight as tolerated a month later; and records showing negative and normal right lower extremity Homan sign and test results. *Id*. ALJ Sanders also noted that there were numerous medical records to support these findings even after Plaintiff's expiration of insured status on December 31, 2013, including a February 2014 record showing only mildly antalgic gait; February 2014 x-rays of the right fibula and tibia showing no fracture or dislocation; and a March 2014 record showing normal gait. *Id*. at 82.

ALJ Sanders' explanation for finding these opinions to be persuasive is clearly articulated and supported by substantial evidence. Notably, ALJ Sanders accommodated all of the physical restrictions recommended by Drs. Bekal and Bolz and even imposed greater restrictions in areas where she found Plaintiff's subjective complaints and the medical evidence of record to merit more physical limitations. *See id*. at 79-83. Thus, to the extent that Plaintiff maintains that these medical opinions support her work-preclusive restriction of leg elevation, her argument lacks merit. *See*

9

*Putman v. Comm'r of Soc. Sec.*, No. 2:20-CV-3895, 2021 WL 2700330, at *5 (S.D. Ohio July 1, 2021) (Jolson, M.J.) ("An ALJ does not commit reversible error when discounting a medical opinion or an administrative finding because the ALJ determines that a claimant is more limited than opined."); see also Mosed v. Comm'r of Soc. Sec., No. 2:14–cv–14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) report and recommendation adopted, 2016 WL 1084679 ("Plaintiff's argument that the ALJ erred in assessing a more restrictive RFC than that opined by the State agency consultants is curious and unavailing.")

In short, ALJ Sanders appropriately considered all of the evidence of record and rendered a physical RFC assessment, which was supported by substantial evidence, including Plaintiff's complaints, medical records, and state medical opinions. *See* 20 C.F.R. § 404.1545(a)(3) (stating that RFC assessments should be "based on all of the relevant medical and other evidence"). Further, while it is true that the ALJ's decision must be supported by substantial evidence, it is Plaintiff who "bears the burden of proving the existence and severity of limitations caused by her impairments" through step four of the sequential evaluation process. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Accordingly, it was Plaintiff's burden to convince the ALJ that these impairments mandated stricter limitations. She failed to do so. *See, e.g., Cejka v. Comm'r of Soc. Sec.,* No. 12-11102, 2013 WL 1317213, at *15 (E.D. Mich. Feb. 27, 2013), *report and recommendation adopted*, No. 12-11102-DT, 2013 WL 1294133 (E.D. Mich. Mar. 29, 2013) ("Plaintiff acknowledges that no treating physician imposed any limitations on plaintiff as a result of her carpal tunnel syndrome, and does not point to any limitations imposed by any consulting or examining physician."). As a result, Plaintiff's statement of error is without merit.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #14) is **DENIED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the Court's docket.

September 13, 2022                                                     *s/Peter B. Silvain, Jr.*
                                                                                     Peter B. Silvain, Jr.
                                                                                     United States Magistrate Judge